IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| McKOOL SMITH, P.C., | § | |
| | § | |
| Petitioner and Counter-Respondent, | § | |
| | § | No. 3:15-cv-01685-M |
| v. | § | |
| | § | |
| CURTIS INTERNATIONAL, LTD., | § | |
| | § | |
| Respondent and Counter-Petitioner. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Application for Order Confirming Arbitration Award [Docket Entry #1] and Respondent's Counter-Motion to Vacate Arbitration Award [Docket Entry #30]. Having considered the Application and Motion, the Court finds that the Petitioner's Application should be **GRANTED**, and the Respondent's Counter-Motion should be **DENIED**.

## PROCEDURAL HISTORY

McKool Smith, P.C. ("McKool Smith") instituted arbitration against Curtis International, Ltd. ("Curtis") on April 30, 2014. On May 13, 2015, following an arbitration proceeding before the International Centre for Dispute Resolution International Arbitration Tribunal of the American Arbitration Association, Richard C. Levin ("the Arbitrator") entered a Final Award in favor of McKool Smith. On the same date, McKool Smith filed an Application for an Order Confirming the Arbitration Award in this Court. In response, on July 21, 2015, Curtis filed a Counter-Motion to Vacate the Arbitration Award.

## BACKGROUND

Curtis is a Canadian entity involved in the importation and sale of electronics and appliances. McKool Smith is a law firm based in Dallas, Texas. In June and July of 2013, two

1

patent infringement lawsuits—the "Zenith case" and the "Mitsubishi case"—were brought

against Curtis in the U.S. District Court for the Southern District of Florida.  On September 10,

2013, Curtis retained McKool Smith as counsel for these lawsuits and the parties entered into a

standard engagement agreement (the "Agreement").[1]  Pursuant to the Agreement, McKool Smith

represented Curtis in both lawsuits for approximately four months, from September, 2013, to

January, 2014.  ████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

  ███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████  On January 14, 2014, Curtis reached a settlement in the patent cases.

Following the settlement, a dispute arose between the parties regarding the unpaid

invoices for legal services and services provided by expert witnesses.  According to the terms of

---

[1] The parties filed the Agreement under seal.  Because the Court determines that there is no reason for all of its terms to remain confidential, this Opinion describes and quotes from the Agreement as appropriate.

their Agreement, disputes between the parties first must be referred to non-binding mediation,

and, if the parties cannot agree on a mediator or are unwilling to abide by the mediator's

recommendation, disputes must be resolved by binding arbitration conducted by the American

Arbitration Association (AAA), in accordance with its Commercial Arbitration Rules, with each

party bearing its attorney fees and an equal share of arbitration costs.[2]  Since McKool Smith and

Curtis were unable to agree on a mediator, McKool Smith initiated arbitration on April 30, 2014

for breach of the Agreement.[3]  In arbitration, McKool Smith sought to recover unpaid legal fees

in the amount of $1,309,992.16 and expert witness fees in the amount of $92,149.40,[4] as well as

pre- and post-award interest.  Curtis disputed the amount billed, contending that McKool Smith

could not prove its fees were reasonable and that McKool Smith performed unauthorized tasks,

including the unapproved retention of expert witnesses.

The dispute went to arbitration in July, 2014, and, after a hearing on the merits, the

Arbitrator issued a Final Award, ordering Curtis to pay McKool Smith the total amount of all

unpaid invoices: $1,402,141.56.[5]  The Final Award also ordered payment of five percent interest

---

[2] The Agreement states: "All claims, disputes, or other differences between Client and the Firm or any of its attorneys related to the . . . litigation, our engagement or services related thereto, or this agreement shall first be referred to a business person selected jointly by [Client] and the Firm. . . . If the parties are unable to agree on a business person, or if, at least, one of the parties is unwilling to accept and abide by the non-binding recommendation of the business person, then any and all such claims, disputes, or differences shall be exclusively resolved by binding arbitration pursuant to the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), with arbitration to occur at Dallas, Texas. The arbitration shall be before a single arbitrator selected from the complex business or commercial cases panel of the AAA, and each party shall bear its own attorney[s'] fees and costs in connection with the arbitration, including the costs of the AAA and the arbitrator, which shall be equally divided." Appl. Order Confirming Arbitration Award [Docket Entry #1], Ex. 1 [the Agreement], at 3–4.

[3] The Billing Practices and Procedures section of the Agreement details that "billings are due within thirty days of when you receive them. Moreover, if, during the course of our representation, billing disputes arise which remain unresolved or if timely payment is not made, we reserve the right to withdraw from further representation after appropriate notice in accordance with ethical standards and court requirements." Agreement at 2.

[4] The two expert witnesses have assigned their claims to McKool Smith. Appl. Order Confirming Arbitration Award [Docket Entry #1], Ex. 3 [the Final Award], at 26.

[5] The Final Award was filed under seal.  The Court has redacted portions of this Opinion to preserve the Final Award's confidentiality as appropriate.

per annum beginning April 30, 2014, the day that the arbitration was initiated, and continuing after the date of the award.  In addition, the Final Award ordered Curtis to reimburse McKool Smith the sum of $5,725.00 for arbitration fees and expenses incurred by McKool Smith in excess of the apportioned costs.

Here, McKool Smith seeks to have the Final Award confirmed.  Curtis moves to vacate the Final Award for three reasons: 1) the award violates public policy; 2) the arbitrator exceeded his powers; and 3) the award is in manifest disregard of the law.  The Court finds Curtis's claims are without merit, and confirms the Final Award in its entirety.

## LEGAL STANDARD

Under the Federal Arbitration Act (FAA), federal courts are limited to a narrow review of arbitration awards.  *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008); *Hamstein Cumberland Music Grp. v. Williams*, 532 F. App'x 538, 542 (5th Cir. 2013).  In order to promote arbitration as an expeditious and cost-effective alternative to litigation, judicial review of arbitration awards is "exceedingly deferential" *McVay v. Halliburton Energy Servs., Inc.*, 608 F. App'x 222, 224 (5th Cir. 2015) (citing *Petrofac, Inc. v. DynMcDermott Petroleum Ops. Co.*, 687 F.3d 671, 674 (5th Cir. 2012)); *Dealer Computer Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. 2012).  When parties have agreed to arbitrate, the court must confirm the award "unless the award is vacated, modified, or corrected."  9 U.S.C. § 9.  In accordance with the Supreme Court's decision in *Hall Street Associates*, the four grounds listed in Section 10 of the FAA are the exclusive means by which a party can vacate an arbitration award.  *Citigroup Global Mkts. Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009).

According to Section 10 of the FAA, an award can be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;

4

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10.

Thus, in considering motions to vacate, courts give great deference to the arbitrator's decision and may vacate awards "only on very narrow grounds." *Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007), *abrogated on other grounds* by *Hamstein Cumberland Music Grp.*, 532 F. App'x at 542. If an award "is rationally inferable from the letter or purpose of the underlying agreement," then the award should be upheld by the court. *Id.* (citation omitted). When a party has agreed to arbitrate, the award will be set aside only in "very unusual circumstances." *Morgan Keegan & Co. v. Garrett*, 495 F. App'x 443, 448 (5th Cir. 2012) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Even a misapplication of law or a misinterpretation of fact is not a sufficient basis for setting aside the final award of an arbitrator. *Am. Laser Vision*, 487 F.3d at 258; *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006); *Grp. 32 Dev. & Eng'g, Inc. v. GC Barnes Grp., LLC*, 2015 WL 144082, at *2 (N.D. Tex. Jan. 9, 2015) (Boyle, J.).

## ANALYSIS

A.    *Whether the Award Violates Public Policy*

First, Curtis argues that the Final Award must be vacated because it is contrary to public policy. Specifically, Curtis contends that the Final Award conflicts with several provisions of

the Texas Disciplinary Rules of Professional Conduct ("TDR"), including provisions prohibiting law firms from charging or collecting unconscionable fees, requiring lawyers to abide by clients' decisions concerning representation, and requiring firms to withdrawal as counsel when their interests conflict with the interests of their clients.  The merits of Curtis's allegations are outside this Court's "extraordinarily narrow" scope of review.  *See Glover v. IBP, Inc.*, 334 F.3d 471, 473–74 (5th Cir.2003).  The Fifth Circuit has foreclosed the use of non-statutory grounds for vacatur, including public policy grounds.  *Citigroup Global Mkts.*, 562 F.3d at 358 (holding that common law grounds are not a grounds for vacatur); *Saipem Am. v. Wellington Underwriting Agencies Ltd.*, 335 F. App'x 377, 380 (5th Cir. 2009) (holding that a court "may vacate the arbitration award . . . only if a statutory ground supports the vacatur"); *Householder Grp. v. Caughran*, 354 F. App'x 848, 850 (5th Cir. 2009) (same); *see also*, *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 2010 WL 1962676, at *2 (N.D. Tex. May 14, 2010) (Boyle, J.) (holding that public policy, specifically, is not grounds for vacatur of an arbitration award based on the Fifth Circuit's interpretation of *Hall Street Associates*).  The Court therefore will not consider Curtis's public policy claims on the merits and will not vacate the Final Award on the grounds that it violates public policy.

> B.      *Whether the Arbitrator Exceeded His Power*

Next, Curtis contends that the award must be vacated because the Arbitrator exceeded his power, in violation of FAA § 10(a)(4).  Under the FAA, an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  An arbitrator derives his power from the underlying agreement between the parties.  *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015).  The extent of an arbitrator's authority is

determined by "the provisions under which the [arbitrator was] appointed." *Id.* Thus, an arbitrator's power is not unlimited. An award will be vacated where "the contract creates a plain limitation on the authority of the arbitrator" and the award "ignores the limitation." *Why Nada Cruz, L.L.C., v. Ace Am. Ins. Co.*, 569 F. App'x 339, 342 (5th Cir. 2014). However, all doubts must be resolved in favor of arbitration because "district courts' review of arbitrators awards under § 10(a)(4) is limited to the sole question of whether the arbitrator (even arguably) interpreted the parties' contract." *BNSF R. Co.*, 777 F.3d at 788 (internal quotation marks omitted).

Here, Curtis contends that the Arbitrator exceeded his power by: 1) awarding expert fees, in violation of the Agreement; 2) "contort[ing] the essence of the contract" by failing to read it in light of Texas's disciplinary rules for attorneys and by awarding non-legal fees and pre-judgment interest; and 3) relying on his own experiences and practice and applying his own notion of economic justice.

Curtis argues that the Agreement did not give the Arbitrator authority to resolve claims for expert fees. However, the Agreement makes clear that the litigation may require expert witnesses and unambiguously states that Curtis "will be ultimately responsible" for any amounts billed by retained experts. Although the Agreement says that McKool Smith will "normally" discuss retention of experts with Curtis before retaining them, it does not require such consultation. Additionally, the Arbitrator found that McKool Smith did discuss with Curtis retaining experts and did not act against Curtis's clear instructions in retaining experts. Thus, resolving all doubts in favor of arbitration, the Court concludes the Arbitrator did not ignore a "plain limitation" on his authority by awarding expert fees.

Even if the Arbitrator did not have authority under the contract to award expert fees to

McKool Smith, Curtis waived its objection by submitting the issue to the Arbitrator. "[B]y their actions, the parties may agree to arbitrate disputes that they were not otherwise contractually bound to arbitrate." *OMG, L.P. v. Heritage Auctions, Inc.*, __ Fed. App'x __, 2015 WL 2151779, at *3 (5th Cir. May 8, 2015). A party cannot assert § 10(a)(4) to challenge the arbitrator's decision as outside his authority after awaiting an unfavorable arbitration decision on an issue clearly under consideration. *Id.* at 5; *McVay*, 608 F. App'x at 225. When a party "voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator has no authority to resolve it." *McVay*, 608 F. App'x at 225. Therefore, based on the language in the Agreement regarding experts and the submission of the issue to the Arbitrator, the Court finds that the Arbitrator was acting within his authority in awarding expert fees.

Curtis also contends that the Arbitrator exceeded his power under § 10(a)(4) by awarding one hundred percent of McKool Smith's fees and prejudgment interest. Specifically, Curtis argues that the Agreement incorporates the Texas disciplinary rules for attorneys, which, Curtis alleges, require McKool Smith to affirmatively show that each task it billed for was approved by Curtis and that the amount billed was reasonable and cost-effective, which it failed to do. Additionally, Curtis argues that the Arbitrator awarded McKool Smith fees for non-legal, administrative tasks, in violation of the Agreement. The Arbitrator considered these arguments and found that McKool Smith's bills were sufficiently specific, that each item billed for was covered under the Agreement, ███████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████. Final Award at 22–25. The Arbitrator also found that all tasks were properly charged for. Final Award at 25. Even if the Arbitrator erred in his factual findings, the Court may not set aside an award on that basis. The Court may not overturn the Arbitrator's

decision "based on the merits of a party's claim," as the Court does "not have authority to conduct a review of an arbitrator's decision on the merits." *Householder Grp.*, 354 F. App'x at 851; *see also Citigroup Global Markets, Inc.*, 562 F.3d at 351 (stating that awards are upheld "even if based upon error in law or fact").

Curtis also argues that the award of prejudgment interest violated the Agreement, because the Agreement allowed Curtis to decline to agree to mediation, and the Arbitrator thus could not penalize Curtis for refusing to mediate. The parties agreed that arbitration would be conducted under the AAA Commercial Arbitration Rules and thus "incorporated into their Agreement the AAA's Commercial Arbitration Rules." *Grp. 32 Dev. & Eng'g, Inc.*, 2015 WL 144082, at *4. Under Commercial Arbitration Rule 47(d)(i), an arbitrator's award may include "interest at such rate and from such date as the arbitrator(s) may deem appropriate." The Court lacks authority to engage in a freewheeling review of the Arbitrator's decision to award such interest, as Curtis asks it to do. *See Woods v. P.A.M. Transp. Inc.-L.U.*, 440 F. App'x 265, 268 (5th Cir. 2011) (finding that a district court erred by modifying an arbitrator's award of pre-judgment interest).

Finally, Curtis argues the Arbitrator exceeded his authority because the Arbitrator relied on his own experiences and practice, rather than the underlying Agreement, and that the Award reflects the Arbitrator's own sense of economic justice. A party seeking to vacate an arbitration award on such grounds "must carry a heavy burden." *BNSF R. Co.*, 777 F.3d at 788 (internal quotation marks omitted). A district court should consult the arbitration award and determine if the award is rationally inferable from the underlying agreement.[6] *See id.* The Fifth Circuit has

---

[6] The Court will not address the parties' dispute about whether the Court may rely on an unofficial and incomplete transcript of the arbitration hearings to determine whether the Arbitrator exceeded his authority, because "[t]he award . . . on its face" suggests "that the arbitrator was arguably interpreting the contract," and the Fifth Circuit has instructed that, "in determining whether the arbitrator exceeded [his] authority, district courts should consult the arbitrator's award itself." *BNSF R. Co.*, 777 F.3d at 788.

outlined several factors that indicate whether an arbitrator was arguably interpreting the

underlying contract: "(1) whether the arbitrator identifies [his] task as interpreting the contract;

(2) whether [the Arbitrator] cites and analyzes the text of the contract; and (3) whether [the

Arbitrator's] conclusions are framed in terms of the contract's meaning." *Id.*  All three factors

are present here.  *See* Final Award at 20 ("[T]he claim is for breach of contract to recover legal

fees owing under the retention contract . . . . Claimant proved the elements to show a breach of

contract, a valid contract, performance, breach, and damages."); *id.* at 4–5 (discussing the terms

of the Agreement).

    To the extent that the Arbitrator mentioned items not expressly in the Agreement, it was

at Curtis's request.  *See id.* at 21 (responding to Curtis's argument that the Agreement

incorporated Texas's disciplinary rules, and thus required fees to be reasonable and in

accordance with Curtis's instructions, by saying "the Arbitrator also finds that Claimant proved

the fees it invoiced were reasonable" and "the evidence is clear . . . that Claimant . . . performed

the representation commendably and in accordance with the instructions of [Curtis].").  The

Court thus cannot conclude that the Arbitrator acted solely based on his own sense of economic

justice or exceeded his powers by relying on his own experiences and practice in drawing

conclusions.  Resolving all doubts in favor of the arbitration award, the Court concludes the

Arbitrator interpreted the Agreement.  Therefore, the Court holds that the Arbitrator did not

exceed his power under § 10(a)(4) of the FAA.

    C.    *Whether the Award is in Manifest Disregard of the Law*

    Finally, Curtis claims that the Final Award is in manifest disregard of the law.  As

discussed above, although the Fifth Circuit previously recognized manifest disregard of the law

as a ground for vacatur, s*ee, e.g.*, *Sarofim v. Trust Co. of the West*, 440 F.3d 213, 216 (5th Cir.

2006), the Fifth Circuit no longer recognizes non-statutory bases for vacatur. *Citigroup Global Mkts.*, 562 F.3d at 358 (5th Cir. 2009). Indeed, the Fifth Circuit has explicitly held that manifest disregard of the law is no longer a valid ground for vacatur. *Id.* Therefore, this Court will not review the Award on that basis. The Court therefore must defer to the judgment of the Arbitrator, and confirm the Final Award in its entirety.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Curtis's Counter-Motion to Vacate the Arbitration Award, and finds that McKool Smith's Motion to Confirm the Arbitration Award should be **GRANTED**. The Court will do so by separate judgment.

**SO ORDERED.**

October 14, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**